UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSE MARTINEZ-GONZALEZ,  )<br>    )<br>    Petitioner,  )<br>    )<br>    )<br>v.   )<br>    )<br>UNITED STATES OF AMERICA,  )<br>    )<br>    Respondent.  )<br>_____ ) | CASE NO. C03-3677-TSZ<br>        (CR00-330-TSZ)<br><br>REPORT AND<br>RECOMMENDATION |

## I.   INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Jesse Martinez-Gonzalez is a federal prisoner currently incarcerated at the United States Penitentiary-Victorville in Adelanto, California.  He filed this motion pursuant to 28 U.S.C. § 2255 challenging his sentence on grounds of ineffective assistance of counsel, improper increase of sentence, disproportionate sentence, and reversible variance.  The Government filed a response and Petitioner filed a reply.  After carefully considering the record and the memoranda of the parties, the undersigned concludes that an evidentiary hearing is not necessary and recommends that Petitioner's § 2255 motion should be DENIED.

## II.   BACKGROUND

On January 11, 2001, Petitioner and eighteen other defendants were named in a second superseding indictment for alleged involvement in a drug distribution conspiracy.

REPORT AND RECOMMENDATION
Page - 1

*See* Dkt. #7 at Exs. B, F.  On August 8, 2001, a jury found Petitioner guilty of the following offenses:  count 1, conspiracy to distribute heroin; and counts 13 and 32, possession of heroin with intent to distribute.  *Id.* at Ex. F.  On a Special Verdict Form for Count 1, the jury found that the offense involved one kilogram (1,000 grams) or more of a mixture or substance containing heroin.  *Id.* at Ex. D. Likewise, on a Special Verdict Form for Count 13, the jury found that the offense involved 100 grams or more of a mixture or substance containing heroin.  *Id.* at Ex. E.  Petitioner's subsequent motion for a new trial was denied.  He was sentenced on December 14, 2001, to 121 months of incarceration followed by five years of supervised release.  *Id.* at Ex. F.

Petitioner appealed his conviction and sentence to the Ninth Circuit Court of Appeals, which issued its mandate on February 26, 2003, affirming the judgment of the District Court.  On November 25, 2003, Petitioner timely filed this § 2255 motion raising the following grounds for relief:

> A. Denial of his Sixth Amendment right to effective assistance of counsel based on failure to investigate facts and law.
>
> B. Sentence was improperly increased by violations of the due process clause of the Fifth Amendment.
>
> C. Sentence was disproportionate to the crime of conviction in violation of the Eighth Amendment.
>
> D. Failure to properly advise the jury of its duty to assess Martinez's culpability in the conspiracy resulted in a reversible variance.

*See* Dkt. #2.

### III.  DISCUSSION

A. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Petitioner claims that he was denied his Sixth Amendment right to effective assistance of counsel.  A defendant claiming ineffective assistance of counsel must

REPORT AND RECOMMENDATION
Page - 2

demonstrate (1) that counsel's actions were outside the wide range of professionally competent assistance, and (2) that the defendant was prejudiced by reason of counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, to establish such a claim, a petitioner must overcome the "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* at 689 (citations omitted). To show prejudice, a defendant must show a reasonable probability that the result would have been different but for the counsel's errors. *Id.* at 694; *United States v. Cochrane*, 985 F.2d 1027, 1230 (9th Cir. 1993). The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Strickland*, 466 U.S. at 697. Furthermore, if both components are considered, there is no prescribed order in which to address them. *Id.*

        1.     <u>Failure to Investigate</u>

First, Petitioner contends that his trial and appellate counsel were ineffective for failing to address the trial court's application of the Sentencing Guidelines. He argues that there was no specific inquiry to determine whether he could reasonably foresee that the conspiracy would distribute the quantity of heroin attributed to him at sentencing. He also argues that neither trial nor appellate counsel attempted to investigate or seek appointment of expert witnesses to evaluate his mental state or the possible effects of his long term addiction to heroin. Therefore, Petitioner claims that he was prejudiced by their failure to investigate the law and facts because had they done so, he would have received a far lower sentence.

Petitioner, however, has failed to present any specific facts that support this claim of failure to investigate. Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir.

REPORT AND RECOMMENDATION
Page - 3

1994) (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1992)). Moreover, the record contains no evidence regarding trial and appellate counsel's investigation, lack of investigation, or reasons for failing to investigate. Accordingly, I conclude that Petitioner has not shown that his trial or appellate counsel's performance was deficient on the basis of failure to investigate.

      2.      <u>Failure to Properly Address Jury Instructions</u>

Next, Petitioner argues that his trial counsel was ineffective because he failed to insure that a proper instruction based on *Pinkerton v. United States*, 328 U.S. 640 (1946), was given and he failed to request a lesser included offense instruction. He also claims that his appellate counsel was ineffective for not addressing trial counsel's failures on appeal.

      (a)      <u>*Pinkerton* Instruction</u>

Under *Pinkerton*, a court may instruct that a defendant could be held liable for a substantive offense committed by a co-conspirator as long as the offense occurred within the course of the conspiracy, was within the scope of the agreement, and could reasonably have been foreseen as a necessary and natural consequence of the unlawful agreement. 328 U.S. at 647-48. This is true even though the defendant was not aware of the performance of those acts, nor even the existence of the other actors in the conspiracy. *Id.*

Here Petitioner asserts that although the jury was given a "*Pinkerton*-like" instruction, the instruction did not fully or properly address the requirements of foreseeability.[1] Thus, he contends that there is a strong possibility that he was

---

[1] Petitioner's argument that the *Pinkerton* instruction was inadequate because it made no mention of the substantive counts is meritless because the two substantive

REPORT AND RECOMMENDATION
Page - 4

improperly convicted on the conspiracy charge due to trial counsel's ineffectiveness in failing to ensure that a proper *Pinkerton* instruction was given.

When reviewing a claim of error relating to jury instructions, the instructions must be reviewed as a whole. *United States v. Marabelles*, 724 F.2d 1374, 1382 (9th Cir. 1984) (citing *United States v. Abushi*, 682 F.2d 1289, 1299 (9th Cir. 1982)). Moreover, the adequacy of the entire charge must be evaluated in the context of the whole trial. *United States v. James*, 576 F.2d 223, 227 (9th Cir. 1978). A trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented. *Id.* at 226.

The conspiracy issue in this case is fairly and adequately covered by Instruction 17 and the sequence of instructions immediately following it. *See* CR00-330-TSZ-21, Court's Instructions, Dkt. #640. Instruction 17 identifies the conspiracy charge, it sets out the elements needed to find defendant guilty, and it indicates that the Government must prove each element beyond a reasonable doubt. Instructions 18 and 19 briefly describe the law relating to the elements of conspiracy. And, contrary to Petitioner's claim, Instruction 20 clearly sets out the "foreseeability requirement" as follows:

> Each member of the conspiracy is responsible for the actions of the other conspirators performed during the course and in furtherance of the conspiracy. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also, under the law, committed the crime. Before you may consider the statements or acts of a co-conspirator, you must first determine whether the acts or statements were made during the existence of an[d] in furtherance of an unlawful scheme, and *whether any offense was one which could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement*.

---

counts against Petitioner for possession of heroin were based on his actions, rather than on substantive offenses committed by co-conspirators.

REPORT AND RECOMMENDATION
Page - 5

*Id.* (emphasis added).  Moreover, the "foreseeability" requirement is reiterated in Instruction 24, which explains the special verdict forms for Counts 1 and 13.

Each of these instructions incorporates text from the Ninth Circuit Manual of Criminal Model Jury Instructions, Section 8.20 (*Pinkerton* Charge).  Accordingly, when this sequence of instructions is read and viewed as a whole, they present an accurate statement of the applicable law and valid instruction on the *Pinkerton* "foreseeability" requirement.  Therefore, Petitioner's claim of ineffective assistance of trial counsel for failing to insure a proper *Pinkerton* instruction was given is meritless.

    (b)  <u>Lesser Included Offense Instruction</u>

Petitioner also claim that his trial counsel's failure to request a lesser included offense instruction denied his right to have the jury determine whether the evidence demonstrates simple possession or possession with intent to distribute.  He argues that with his history of drug abuse and the fact that no drugs were ever found at his house or in his possession, there is a strong possibility that the jury might have found him guilty of simple possession, which carries a significantly lower sentence.

A defendant is not entitled to a lesser included offense instruction unless "the evidence at trial is such 'that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater.'"  *United States v. Powell*, 932 F.2d 1337, 1342 (9th Cir.), *cert. denied*, 112 S.Ct. 256 (1991) (quoting *Schmuck v. United States*, 489 U.S. 705, 716 n. 8 (1989)).  Simple possession of a controlled substance is a lesser included offense of possession with intent to distribute. *Id.* at 1341-42.  But, if a jury finds possession in circumstances where large quantities of drugs and other evidence tending to establish distribution are present, such a jury could not rationally conclude that there was not intent to distribute.  *Id.* at 1342; *see also, United States v. Espinosa*,

REPORT AND RECOMMENDATION
Page - 6

827 F.2d 604, 615 (9th Cir. 1987), *cert. denied*, 458 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988). A simple possession instruction would therefore not be necessary. *Id.*

In Petitioner's direct appeal to the Ninth Circuit Court of Appeals, the court in an unpublished opinion held that the evidence was sufficient to affirm his conviction on the two substantive counts of possession with intent to deliver heroin. *See* Dkt. #17 at Ex. A, *United States v. Martinez-Gonzalez*, 60 Fed. Appx. 42, 2003 WL 678157 (9th Cir. Wash.). As support for this holding, the Ninth Circuit referred to the following facts:

> Martinez-Gonzalez also challenges the sufficiency of the evidence underlying his conviction on two counts of possession with intent to deliver heroin. Count 13 alleged that Martinez-Gonzalez possessed 100 grams or more of heroin on June 9, 2000. In conversations recorded on June 9th, between Martinez-Gonzalez and Tomate and Tomate and his brother Joel[2], the participants used the phrases: "tripe tacos," and "It's for eight glasses . . . Guys, of course." Martinez-Gonzalez asked Tomate "what happened with the–those guys," and said a "buddy was going to stop by so that he–so that he could take a look at it . . . ." Three and one-half hours later, Martinez-Gonzalez again told Tomate he needed "about seven boys," stated that he "put one to work," and asked Tomate if he had "the other one." Shortly after this conversation, law enforcement agents followed Gonzalo (Tomate's roommate) from Tomate's apartment building to 7319 16th Avenue S.W., the home where Martinez-Gonzalez resided. Gonzalo and another man were admitted to the house and stayed about a half-hour.
>
> At trial, Lepe[3] explained that heroin sold in large quantities was divided in "pieces," with one piece being equal to 25 grams. Lepe testified that drug dealers sometimes refer to heroin pieces as "bring me a guy" or "muchachas." Nava[4] stated that he sold pieces of heroin to Martinez-Gonzalez in 1997 and twice in 2000. Nava testified that "tripes" meant three pieces of heroin and he thought Martinez-Gonzalez used that word

---

[2]During trial, Ramon Nava-Vargas ("Tomate") and Joel Nava-Vargas ("Joel") were identified as members of the conspiracy who made their living selling drugs.

[3]Jose Lepe was also a member of the conspiracy.

[4]David Nava (Nava) was another identified member of the conspiracy.

REPORT AND RECOMMENDATION
Page - 7

before. Nava testified that Tomate accompanied him once when he delivered heroin to Martinez-Gonzalez.

Count 32 charged Martinez-Gonzalez with possession of heroin with intent to distribute. On June 20, 2000, law enforcement agents recorded conversations between Tomate and Martinez-Gonzalez and Tomate and Joel. Tomate and Martinez-Gonzalez arranged to meet in forty minutes and discussed the "tripes" Martinez-Gonzalez requested. Then Tomate called Joel and asked if "there [are] three spoons," directed Joel to "measure . . . the three spoons," and asked Joel to "bring them to me outside." Agents observed Joel hand something to Tomate in the parking lot of their apartment building. Then Tomate proceeded to Martinez-Gonzalez's residence, arriving with three other men. Martinez-Gonzalez exited his house and walked toward the rear of the house with Tomate. Tomate left five minutes later.

Agents intercepted calls between Tomate and Martinez-Gonzalez using the term "guys." Lepe and Nava testified that "guys" and "tripes" are code for heroin pieces. Nava provided testimony about Martinez-Gonzalez's long term involvement in purchasing heroin. In addition, a paid informant, X-O-L Martinez-Lopez ("Lopez"), testified that he phoned Martinez-Gonzalez to arrange a heroin purchase. Martinez-Gonzalez agreed to meet Lopez and they discussed, but never completed, a drug transaction. Lopez's testimony provided additional evidence that Martinez-Gonzalez was involved in heroin distribution. Given this context, a rational jury could reasonably infer that the phone conversations between Martinez-Gonzalez and Tomate were discussions of drug transactions. Viewing all the evidence in the light most favorable to the Government, we conclude sufficient evidence existed to find that Martinez-Gonzalez committed the crimes of possession with intent to deliver heroin.

*Id.* at Ex. A, pp. 45-46.

Having reviewed witness testimony from Petitioner's trial that confirms these evidentiary facts, I conclude that in light of the quantity of drugs and the evidence of distribution reflected in these facts, a rational jury could not have convicted Petitioner of simple possession and acquitted him of possession with intent to distribute. Accordingly, as there was no basis for a simple possession instruction in this case, trial counsel was not ineffective in his failure to request the lesser included offense instruction.

### 3. <u>Inadequacy at Sentencing</u>

Petitioner claims that trial counsel was inadequate at sentencing because he "accepted, as a foregone conclusion, that Martinez [petitioner] was subject to a mandatory minimum sentence of ten years because the jury had made a finding that the conspiracy (<u>not</u> Martinez) had involved 1,000 or more grams of heroin." Petitioner argues that this was ineffective assistance of counsel because it relieved the government of their burden of proving reasonable foreseeability.

However, the record reflects that the government was not relieved of its burden of proving "reasonable foreseeability' beyond a reasonable doubt. As noted in subsection 2(a) above, the jury was properly instructed on the foreseeability requirement for the Count 1 conspiracy charge. Indeed, Instruction 24, which explained the special verdict forms that the jury was required to complete if defendant was found guilty on Counts 1 and 13, asked the jury to determine the amount of controlled substance involved, and it clearly instructed the jury that with respect to Count 1 "that amount is: (1) the total amount of heroin distributed and intended to be distributed by the defendant in furtherance of the conspiracy, and (2) the amount distributed and intended to be distributed by other conspirators, *if the defendant could reasonably foresee that amount to be a necessary or natural consequence of the unlawful agreement*. *See* United States v. Nava-Banuelos, Case No. CR00-330-TSZ-21, Dkt. #640, Court's Instructions (emphasis added).

The jury is presumed to have followed the jury instructions in making its finding on this special verdict form. The jury's response on the special verdict form for Count 1 established that they unanimously found, beyond a reasonable doubt, that the offense involved "one kilogram (1000 grams) or more of a mixture or substance containing

REPORT AND RECOMMENDATION
Page - 9

heroin." *See* CR00-330-TSZ-21, Dkt. #646.  Thus, based on the specific quantity of heroin the jury designated on the special verdict for Count 1, Petitioner's trial counsel properly determined that Petitioner was subject to a mandatory minimum sentence of ten years.  *See* 21 U.S.C. § 841(b)(1)(A).  Therefore, I conclude that Petitioner's claim that he received ineffective assistance of counsel at sentencing is meritless.

Moreover, in light of this Court's conclusions that the entirety of Petitioner's ineffective assistance of trial counsel claims are without merit, his appellate counsel was likewise not deficient in failing to raise these meritless issues on appeal.  *See Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991) (no prejudice by appellate counsel's failure to raise issue of ineffective assistance where trial counsel's performance did not fall below the *Strickland* standard).

B.   INCREASED SENTENCE

Petitioner argues that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d (2000), when the jury made no finding of fact as to his actual involvement in the 1,000 gram conspiracy in Count 1, the largest quantity of drugs that could have been attributed to him was that for which the jury made findings in Counts 13 and 32.  *Apprendi* requires the government to prove beyond a reasonable doubt any fact, other than a prior conviction, that exposes the defendant to a greater punishment than that authorized by the guilty verdict or plea.  *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348.  As noted in the preceding discussion, as a result of finding Petitioner guilty of conspiracy to distribute heroin in Count 1, the jury in this case made a specific finding on the quantity of heroin (1 kilogram or 1000 grams) attributable to Petitioner in the special verdict for Count 1.  This crime carries a statutory maximum penalty of life imprisonment. 21 U.S.C. § 841(b)(1)(A).   Accordingly, Petitioner's sentence of 121

1 months of incarceration followed by five years of supervised release was still below the
2 applicable statutory maximum of life imprisonment and did not violate *Apprendi*.

C. DISPROPORTIONATE SENTENCE

Petitioner argues that his sentence was disproportionate to his involvement in the total conspiracy and to the sentences given to his more culpable alleged co-conspirators, in violation of the Eighth Amendment. He alleges that this disparity in sentencing resulted from sentencing him based on a jury finding of the drug quantity of the total conspiracy.

Because individual circumstances may vary from one offender to another, it is within a sentencing court's discretion to impose disparate sentences on co-defendants. *See United States v. Meyer*, 802 F.2d 348, 353 (9th Cir. 1986), *cert. denied*, 484 U.S. 817 (1987). A sentence may be reversed on Eighth Amendment grounds if a comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. *See Solem v. Helm*, 463 U.S. 277, 289-90 (1983). Thus, if a sentence does not exceed statutory limits, it generally will not be overturned on Eighth Amendment grounds. *See United States v. Zavala-Serra*, 853 F.2d 1512, 1518 (9th Cir. 1988).

In the present case, Petitioner presents no argument that his sentence was outside the statutory limit. In fact, his sentence of 121 months imprisonment and five years of supervised release did not exceed the statutory maximum of life imprisonment set forth in 21 U.S.C. § 841(b)(1)(A), and it is only one month above the statutory minimum of ten years. Accordingly, I conclude that Petitioner has failed to show that his sentence was imposed in violation of the Eight Amendment.

D. REVERSIBLE VARIANCE

REPORT AND RECOMMENDATION
Page - 11

In his final claim, Petitioner maintains that the failure to properly advise the jury of its duty to assess his culpability in the conspiracy resulted in a reversible variance. A legally significant variance occurs only when evidence presented at trial proves facts "materially different" from those alleged in the indictment. *United States v. Olano*, 62 F.3d 1180, 1194 (9th Cir. 1995), *cert. denied*, 519 U.S. 931, 117 S.Ct. 303, 136 L.Ed.2d 221 (1996). A variance warrants reversal only if it prejudices the defendant's substantial rights. *United States v. Kenny,* 645 F.2d 1323, 1334 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 245 (1981). Of the three ways in which a variance may be prejudicial, the one that is of concern here is exposure to prejudicial evidentiary spillover. *See United States v. Morse*, 785 F.2d 771, 775 (9th Cir.), *cert. denied*, 476 U.S. 1186 (1986).

The Supreme Court has defined evidentiary spillover as the "transference of guilt" from one defendant to another. *Kotteakos v. United States*, 328 U.S. 750, 774 (1946). Generally, in this type of situation, a defendant argues that he or she was only involved, if at all, in a minor conspiracy that is unrelated to the overall conspiracy charged in the indictment and that a multiple conspiracies instruction is required in order to ensure that there is no "spillover" of guilt from one defendant to another. *United States v. Anguiano*, 873 F.2d 1314, 1318 (9th Cir.), *cert. denied*, 493 U.S. 969 (1989).

Here, Petitioner maintains that there was no evidence that he knew of Filemon[5] or David Nava's entire operation or that any benefit directly fell to him from the conspiracy. He claims that it is likely that the jury was unable to compartmentalize the evidence and disregard evidence about the Filemon-David Nava distribution scheme in

---

[5] Filemon Nava-Banuelos and his family members were identified as leaders of the conspiracy. *See* Government's Response, at 6.

REPORT AND RECOMMENDATION
Page - 12

finding him guilty. He also argues that while the jury may have had enough evidence to make its finding on the quantity of drugs attributable to the "conspiracy," it lacked information to make a finding on his involvement. Accordingly, Petitioner contends that the evidentiary spillover caused by joinder of the total conspiracy to his part in that conspiracy resulted in a prejudicial variance and a substantially higher mandatory minimum sentence than justified by the jury's findings.

However, there is no problem of spillover when, as in this case, the defendant stands trial alone. *Id.* (citations omitted). Furthermore, the trial court instructed the jury that it could not convict the defendant if it found the defendant participated in an uncharged conspiracy but was not a member of the charged conspiracy. *See* CR00-0330-TSZ-21, Dkt. #640, Instruction No. 21. Moreover, the jury was properly instructed on the requirements for determining the quantity of drugs attributable to Petitioner on the Count 1 conspiracy. Thus, I conclude there was neither a variance nor prejudice to Petitioner's substantial rights.

## IV.  CONCLUSION

Accordingly, the Court recommends that Petitioner's § 2255 motion be DENIED. A proposed Order accompanies this Report and Recommendation.

DATED this 12th day of May, 2005.

                              MONICA J. BENTON
                              United States Magistrate Judge